UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEORGE M. GUTIEREZ JR., <br><br>                 Plaintiff, <br><br> v. <br><br> NEW YORK CITY DEPARTMENT <br> OF EDUCATION, <br><br>                 Defendant. | **Case No. 22-CV-6589** <br><br> **COMPLAINT** <br><br> **ECF CASE** |

COMES NOW PLAINTIFF George M. Gutierez Jr., by his undersigned attorneys, for his complaint against Defendant New York City Department of Education, and alleging as follows:

### NATURE OF THE ACTION

1. This is an action for religious discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, on the grounds that Defendant failed to reasonably accommodate Plaintiff's sincerely held religious objections to a mandatory COVID-19 vaccination policy, wrongly denied his requested religious exemption, and as a result illegally terminated his employment. This is not an action challenging the legality of the COVID-19 vaccination policy itself, but asserts Plaintiff's individual right to a reasonable accommodation. By this action, Plaintiff seeks all legal and equitable relief available, including reinstatement, back pay, front pay, out of pocket costs, compensatory damages, and attorney's fees and costs. Plaintiff demands trial by jury.

**PARTIES**

2. Plaintiff **George M. Gutierez Jr.** is an adult resident of Brooklyn, New York (Kings County). At all relevant times, Gutierez was an "employee" of Defendant within the meaning of Title VII.

3. Defendant **New York City Department of Education (DOE)** is a local government agency that operates the New York City public school system. At all relevant times, DOE had more than 500 employees. At all relevant times, DOE was Plaintiffs' "employer" within the meaning of Title VII.

**JURISDICTION AND VENUE**

4. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 2000e-5(f)(3) (Title VII).

5. This Court has venue over this action pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2) and 42 U.S.C. § 2000e-5(f)(3) (Title VII), because Defendant resides in this judicial district and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

**ADMINISTRATIVE EXHAUSTION**

6. Plaintiff properly exhausted his administrative remedies under Title VII prior to filing this action.

7. On or about May 13, 2022, within 180 days of the alleged discriminatory acts, Gutierez filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission (EEOC). The charge was assigned charge number 520-2022-06921.

8. On September 6, 2022, the U.S. Department of Justice (to which agency the charge had been assigned because it involved a government respondent) issued a Notice of Right to Sue, a copy of which is attached hereto as **Exhibit A**.

9. This action was filed within 90 days of Plaintiff's receipt of the Notice of Right to Sue.

## ALLEGATIONS

10. Gutierez has been employed by the New York City Department of Education since on or about January 16, 2007.

11. Gutierez has been on Leave Without Pay (LWOP) status and not allowed to report to work since on or about October 8, 2021, as a result of his refusal to take the COVID-19 vaccine due to his sincerely held religious beliefs.

12. Gutierez was a full-time Custodian Engineer, most recently at I.S. 296K and P.S. 106K in Brooklyn. His job duties included facilities management of two and at times up to four buildings; maintaining heating and ventilation systems; handling repairs throughout the buildings; training, supervising, and scheduling maintenance staff; payroll; and managing and ordering supplies.

13. At all relevant times, Gutierez was qualified for his position and performed his duties in a satisfactory manner.

14. On August 23, 2021, DOE employees were notified that "[e]ffective September 27, all DOE employees are required to provide proof that they have received at least one dose of the COVID-19 vaccine."

15. Gutierez is a lifelong Roman Catholic.

16. On or about September 22, 2021, in accordance with DOE procedures, Gutierez submitted a request for a religious exemption to the COVID-19 vaccination policy.

17. In his personal statement, Gutierez explained, *inter alia*, that "[m]y religious beliefs prevent me from being able to take any vaccine that employ the cell lines of children killed through abortion. As all of the available COVID-19 vaccines, in one way or another, are developed or produced from the cell lines of aborted infants I am compelled to refuse any cooperation in regard to these vaccines. My cooperation, direct or indirect, would be an endorsement of abortion, which I view as the killing of innocent children." Gutierez further explained, *inter alia*, that "I am also a member of the Catholic organization the Confraternity of Our Lady of Fatima under the guidance of Bishop Athanasius Schneider who, in regard to this issue of conscience, has come down against any use of the available abortion derived vaccines because it would be a sin to cooperate, even indirectly, with the crime of abortion."

18. On September 23, 2021, Gutierez was notified by email that his request for a religious exemption was denied. The only explanation given was that "[y]our application has failed to meet the criteria for a religious based accommodation."

19. Notably, DOE did not state that they rejected Gutierez's sincerely held religious beliefs or that granting him an accommodation would cause an undue hardship on the agency. Indeed, there is no indication that DOE reviewed Gutierez's application in good faith, if at all.

20. Gutierez appealed this decision on September 24, 2021, pursuant to an arbitration appeal process that was then in place. He was not given a hearing for his appeal to the arbitrator.

21. Gutierez's appeal was denied by the arbitrator, without explanation, on October 3, 2021, which decision was emailed to him on October 7, 2021.

22. Gutierez continued working a regular, full-time schedule while his exemption request and initial arbitration appeal was pending.

23. On or about October 8, 2021, Gutierez was placed on Leave Without Pay (LWOP) status, which was confirmed in an email from one of his supervisors.

24. On November 19, 2021, Gutierez received an email from NYCDOE Division of Human Capital informing him that he would be allowed to submit a new appeal to a citywide panel (which was established as a result of federal court litigation over the existing arbitration appeal procedures). The email stated that "[w]hile your new appeal is pending you will remain on Leave Without Pay status."

25. Gutierez submitted an appeal of the denial of his religious exemption to the citywide panel on December 3, 2021. He included another personal statement, emphasizing, *inter alia*, that "[a]s a Roman Catholic I refuse to knowingly participate in abortion. As all Covid-19 vaccines are produced or developed using cell lines from aborted children, I cannot in good conscience use these products." Gutierez further explained, *inter alia*, that "[t]he problem here is not with vaccines per se," but "the importance of free will in regard to the taking of vaccines, especially ones derived from aborted babies."

26. Gutierez was not given a hearing for his appeal to the citywide panel.

27. On January 7, 2022, Gutierez received an email from NYCDOE Division of Human Resources asking for more information about his request for a religious exemption.

28. Gutierez submitted his answers to the questions on January 14, 2022, noting, *inter alia*, he has not taken any vaccines as an adult, that he has rarely used medications as an adult, and that he has acted consistently with his pro-life beliefs including voting for pro-life political candidates and attending prayer vigils at abortion mills.

29. On March 7, 2022, Gutierez was notified by email that the citywide panel "has decided to deny your appeal." The email stated that "[t]he decision classification for your appeal is as follows: The employee has failed to establish a sincerely held religious belief that precludes vaccination. DOE has demonstrated that it would be an undue hardship to grant accommodation to the employee given the need for a safe environment for in-person learning."

30. In its boilerplate response, the DOE did not explain how Gutierez supposedly does not have "a sincerely held religious belief that precludes vaccination," which is a blatantly false and discriminatory reason for denying him the exemption. Furthermore, as a Custodian Engineer he was not involved in providing "in-person learning" to students.

31. Federal regulations promulgated by the U.S. Equal Employment Opportunity Commission provide that "[i]n most cases whether or not a practice or belief is religious is not at issue." 29 C.F.R. § 1605.1. The EEOC has further explained that "[g]enerally, under Title VII, an employer should proceed on the assumption that a request for religious accommodation is based on sincerely held religious beliefs, practices, or observances" and that "[t]he sincerity of an employee's

6

stated religious beliefs, practices, or observances is usually not in dispute." *See* "What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws" § L.2 (updated July 12, 2022) (available at www.eeoc.gov).

32. DOE never conducted an individualized review of Gutierez's job site or job duties to determine if his religious objections to the COVID-19 vaccine could be reasonably accommodated.

33. It would not have caused an undue hardship on the conduct of DOE's business to grant Gutierez the exemption.

34. Beginning in or about March 2020, Gutierez followed the prescribed COVID-19 health and safety protocols, including: wearing a mask; social distancing; regular sanitizing, with special attention paid to touch points (door handles, faucet handles, etc.); and weekly COVID-19 testing once the vaccination mandate was announced (always negative). All of these precautions were deemed adequate to mitigate the risk of catching or transmitting COVID-19.

35. It would not have caused an undue hardship to allow Gutierez to continue to follow these or similar precautions in lieu of the vaccination.

36. The EEOC has published extensive guidance relating to COVID-19. In "What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws" (updated July 12, 2022) (available at www.eeoc.gov), the EEOC has explained:

> An employee who does not get vaccinated due to a disability (covered by the ADA) or a sincerely held religious belief, practice, or observance (covered by Title VII) may be entitled to a reasonable accommodation that does not pose an undue hardship on the operation of the employer's business. For example, as a reasonable accommodation, an unvaccinated employee entering the workplace might wear a face mask, work at a social distance from coworkers or non-employees, work a modified shift, get periodic tests for COVID-19, be given the opportunity to telework, or finally, accept a reassignment.

7

*Id.* § K.2 (Vaccinations – Overview); *see also id.* § L.3 ("In many circumstances, it may be possible to accommodate those seeking reasonable accommodations for religious beliefs, practices, or observances without imposing an undue hardship."). These are precisely the reasonable accommodations at issue here – testing, masking, and sanitizing – that Gutierez could have followed in lieu of the COVID-19 vaccine.

37. It would not have caused an undue risk to other employees of catching COVID-19 to allow Gutierez to continue following the same health and safety protocols that were in place before DOE announced its mandatory vaccination policy.

38. Nothing changed about the dangers of COVID-19 in the Fall 2021 to render these precautions ineffective. On the contrary, rates of hospitalizations and deaths under the "Delta" variant were declining by October 2021, and the "Omicron" variant, which became dominant in December 2021, is widely acknowledged to be *less virulent* than previous waves have been.

39. Significantly, it was well-established by the Fall 2021 that the available COVID-19 vaccines *do not prevent the transmission of the virus*.

40. On August 5, 2021, during a televised interview with CNN's Wolf Blitzer, CDC Director Dr. Rochelle Walensky stated that the COVID-19 vaccines "continue to work well for Delta, with regard to severe illness and death – they prevent it. But what they can't do anymore is prevent transmission."

41. This was confirmed recently by Dr. Deborah Birx, former White House Coronavirus Response Coordinator, who told Fox News on July 22, 2022, that she "knew these vaccines were not going to protect against infection. . . ."

42. Even Dr. Anthony Fauci has admitted, during an interview with Fox News on July 12, 2022, that the "vaccines – because of the high degree of

transmissibility of this virus – don't protect overly well, as it were, against infection . . . ."

43. Upon information and belief, DOE has no scientific studies, data, or other objective evidence demonstrating that an employee who follows the same health and safety protocols that were in place before DOE announced its mandatory vaccination policy, but who is not vaccinated, poses an increased risk of spreading COVID-19 to other employees. This is pure speculation.

44. Indeed, it is possible that unvaccinated employees who are regularly tested for COVID-19 will be more likely to know they are infected and potentially contagious – and therefore can quarantine and be less likely to transmit the virus unknowingly – than vaccinated employees who do not undergo regular testing.

45. In short, there is no objective, scientific basis for DOE to argue that granting Gutierez a religious exemption to the COVID-19 vaccination policy would have posed an undue risk to other employees of becoming sick from COVID-19. This is pure speculation.

46. To the best of his knowledge, Gutierez is aware of at least two Custodian Engineers whose requests for an exemption were granted by DOE. Furthermore, there were news reports that DOE granted hundreds of exemptions. If granting these exemptions did not cause an undue hardship, it would not have caused an undue hardship to grant Gutierez's exemption.

47. The March 7 email denying his citywide appeal stated that Gutierez had seven calendar days to extend his LWOP or return to work by submitting proof of vaccination, otherwise he "will be subject to termination."

48. Extending his LWOP would have required Gutierez to waive his legal rights, which he declined to do.

49. Because Gutierez will not violate his sincerely held religious beliefs, he did not, and will not, receive the COVID-19 vaccination.

50. Gutierez anticipates that his DOE employment will be formally terminated at any time.

51. To date, Gutierez has not obtained alternative employment.

52. This entire experience has caused Gutierez significant mental and emotional distress and financial hardship.

### COUNT ONE: VIOLATION OF TITLE VII

53. By denying his request for a religious exemption to the mandatory COVID-19 vaccination policy and terminating his employment, Defendant violated Gutierez's rights under Title VII.

54. Title VII provides, *inter alia*, that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's . . . religion . . . ." 42 U.S.C. § 2000e-2(a)(1). Title VII further defines "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business."

55. Accordingly, under Title VII it is unlawful "for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees . . . ." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977); *see also Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986) ("The employer violates the statute unless it 'demonstrates that [it] is unable to reasonable

accommodate . . . an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business.'") (quoting 42 U.S.C. § 2000e(j)).

56. Defendant was recklessly indifferent to Gutierez's federally protected rights.

57. As a direct and proximate result of Defendant's discriminatory conduct, Gutierez has suffered pecuniary and non-pecuniary damages, including lost income and benefits and mental and emotional distress, for which he is entitled to an award of reinstatement, back pay, front pay, out of pocket costs, compensatory damages, and attorney's fees and costs.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury as to all issues triable by jury in the above-captioned civil action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that the Court enter judgment against Defendant on his claim under Title VII, and award him the following:

A. Reinstatement to active duty retroactive to October 8, 2021;
B. Back pay in an amount to be determined at trial;
C. Front pay in an amount to be determined at trial;
D. Out of pocket costs in an amount to be determined at trial;
E. Compensatory damages in an amount to be determined at trial;
F. Pre-judgment and post-judgment interest;
G. Attorney's fees and costs;
H. Appropriate injunctive relief; and
I. Such other relief as justice may require.

*For Plaintiff George M. Gutierez Jr.:*

/s/ *Steven M. Warshawsky*
_____

Steven M. Warshawsky
The Warshawsky Law Firm
118 North Bedford Road, Suite 100
Mount Kisco, NY 10549
Tel: (914) 864-3353
Email: smw@warshawskylawfirm.com
Web: www.warshawskylawfirm.com

Andrea Paparella
Law Office of Andrea Paparella, PLLC
(pandemic mailing address)
4 Dunlap Street
Salem, MA 01970
Tel: (617) 680-2400
Fax: (914) 462-3287
Email: amp@andreapaparella.com
Web: www.andreapaparella.com

Dated: October 28, 2022